# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>FILADELFO MORALES-ROBLERO,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:19-mj-24442-AHG<br><br>**ORDER:**<br><br>**(1) DENYING FIRST MOTION TO DISMISS [ECF NO. 20];**<br><br>**(2) DENYING MOTION TO PRESERVE EVIDENCE AND COMPEL DISCOVERY [ECF NO. 20];**<br><br>**(3) DENYING MOTION TO SUPPRESS STATEMENTS [ECF NO. 20];**<br><br>**(4) DENYING MOTION FOR LEAVE TO FILE FURTHER MOTIONS [ECF NO. 20];**<br><br>**(5) DENYING MOTION TO PREVENT CIVIL ARREST [ECF NO. 40];**<br><br>**(6) DENYING SECOND MOTION TO DISMISS [ECF NO. 40]; and**<br><br>**(7) DENYING MOTION TO STAY [ECF NO. 40]** |

Before the Court are Defendant Filadelfo Morales-Roblero's consolidated motions to: (1) dismiss the complaint on multiple grounds; (2) preserve evidence and compel discovery; (3) suppress statements; (4) for leave to file further motions; (5) prevent civil arrest; (6) dismiss the complaint based on *Village of Arlington Heights*; and (7) stay the trial. ECF Nos. 20, 40. The Court took the matters raised in the Motion under submission after oral argument on September 1, 2020. ECF No. 42. Having considered the parties' papers and their argument, the Court enters the following Order:

## I.  BACKGROUND

Defendant is charged with violating 8 U.S.C. § 1325(a)(1), which provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall [be guilty of a misdemeanor]." *See* ECF No. 1. The Government alleges that on November 20, 2019, a United States Customs and Border Protection agent encountered Defendant standing next to a call box on the shoulder of State Route 94, approximately six and a half miles north of the United States/Mexico International Boundary and approximately eight miles east of the Otay Mesa, California Port of Entry. *Id.* at 2. The Government alleges that Defendant stated that he was a citizen of Mexico and had entered the United States illegally on November 18, 2019. *Id.*

Defendant's case proceeded under the "Streamline" process, which the Department of Justice uses to manage prosecution of misdemeanor charges brought under 8 U.S.C. § 1325. *See United States v. Chavez-Diaz*, No. 18MJ20098 AJB, 2018 WL 9543024, at *1–2 (S.D. Cal. Oct. 30, 2018) (describing the Department of Justice's "Operation Streamline" process, as implemented by the Government in this Court), *rev'd on other grounds*, No. 18-50391, 2020 WL 562292 (9th Cir. Feb. 5, 2020). On November 21, 2019, Defendant was brought to Court for his initial appearance. ECF No. 5. Defendant met with an attorney on the ground floor of the Federal Building that morning before his appearance. ECF No. 20-1 at 2. Defendant was shackled during that meeting. *Id.* At his initial appearance, the Court arraigned Defendant and appointed Federal Defenders to represent

him. ECF No. 5. The Court denied the Government's motion to detain and issued an order setting conditions of pretrial release. *Id.* The Court granted Defendant's motion to modify the conditions of pretrial release on December 10, 2019, and Defendant was released from custody on January 15, 2020. ECF Nos. 13, 18.

On February 27, 2020, defendant filed the consolidated motion currently before the Court, seeking various forms of relief, including dismissal of the complaint. ECF No. 20. On August 18, 2020, defendant filed an additional consolidated motion. ECF No. 40. Defendant's second consolidation motion seeks an order preventing Defendant's civil arrest in the courtroom, and moves to dismiss on an additional constitutional ground. *Id.*

## II. DISCUSSION

### A. First Motion to Dismiss

Defendant's first motion to dismiss asserts five grounds for dismissal: (1) Congress violated the non-delegation doctrine when it enacted § 1325(a)(1); (2) Congress violated the Due Process Clause's prohibition on vague laws when it enacted § 1325(a)(1); (3) the prosecution of Defendant violates equal protection and due process; (4) § 1325 violates the due process clause; and (5) the Complaint fails to allege all the elements of the charged offense. ECF No. 20. The Court addresses each of Defendant's arguments below.

#### 1. Violation of the Non-Delegation Doctrine

Defendant argues that the § 1325 charge against him should be dismissed under the non-delegation doctrine because Congress delegated its core legislative functions to the Executive Branch by allowing "immigration officers" to determine the times and places when an alien can lawfully enter the United States. *See* 8 U.S.C. § 1325(a) (defining as one of three alternative elements of the offense the entry or attempted entry into the United States "at any time or place other than as designated by immigration officers"). The non-delegation doctrine generally forbids Congress from transferring "powers which are strictly and exclusively legislative" to other branches of government. *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (citation omitted). Defendant claims that immigration officials have unfettered discretion to designate times and places for entry on an *ad hoc* basis, and

that the statute does not provide any intelligible principle to guide this discretion.

"In our increasingly complex society, replete with ever changing and more technical problems, [the Supreme] Court has understood that Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Gundy*, 139 S. Ct. at 2123 (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)) (internal alteration and quotations omitted). Therefore, as long as "Congress has supplied an intelligible principle to guide the delegee's use of discretion[,]" a statute does not run afoul of the non-delegation doctrine. In performing the analysis of whether such an "intelligible principle" is supplied, the Court must "constru[e] the challenged statute to figure out what task it delegates and what instructions it provides." *Gundy*, 139 S. Ct. at 2123. Importantly, that task of construction does not require the Court to look only at the text of the statute "in isolation." Rather, the intelligibility of the standards that guide the delegee's discretion must be considered in light of "the purpose of the [statute at issue], its factual background, and the statutory context in which they appear." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 104 (1946).

Construing § 1325 in *United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835 (S.D. Cal. 2019) (Dembin, J.), another court in this District rejected the same non-delegation argument Defendant presents here, reasoning as follows:

> Defendant attempts to read into the statute a broader delegation than actually occurred by arguing that any individual immigration official can designate any piece of land as a place for entry. Not so. Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. *See United States v. Corrales-Vasquez*, 931 F.3d 944, 946 (9th Cir. 2019); *United States v. Aldana*, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *See* 8 CFR § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. *Aldana*, 878 F.3d at 882. To interpret Section 1325(a) to permit a border patrol agent to designate a portion of the border fence "on a whim" is in direct conflict with Congress's clear statutory scheme.

*Id.* at 839-40. This Court agrees. Contrary to Defendant's argument, when viewed in the proper context rather than viewing the statutory text in isolation, § 1325's delegation to immigration officers to designate time and place of lawful entry is not unfettered, but significantly constrained. *Am. Power*, 329 U.S. at 104; *see also Gundy*, 139 S. Ct. at 2123-24 (considering the text of a statute "alongside its context, purpose, and history" to determine the extent of discretion afforded to the delegee in question).

Congress's delegation of the duty to designate the time and place for lawful entry of aliens also does not expand the scope of criminal liability under § 1325. Opening or closing ports of entry does not change or expand the conduct that leads to criminal liability under § 1325. Closing ports or restricting hours of operation may make it more cumbersome for aliens to enter legally, but it does not create new or different criminal liability.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that § 1325 violates the non-delegation doctrine.

### 2. Vagueness

Defendant argues the charge against him should be dismissed because 8 U.S.C. § 1325 is void for vagueness. A statute can be impermissibly vague in either of two circumstances: 1) the statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" or 2) the statute "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Defendant argues that § 1325 is impermissibly vague because it permits immigration officers unlimited discretion to decide what places to designate for lawful entry. As discussed above, this is not correct. Individual Border Patrol agents cannot designate ports of entry on a whim. Closing a port of entry temporarily is not synonymous with "de-designating" it as a port of entry. Section 1325 clearly delineates the conduct that it prescribes and is not impermissibly vague.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that § 1325 is impermissibly vague.

### 3. Equal Protection and Due Process

Defendant argues that the Government's use of the "Streamline" process to prosecute him, rather than through the Central Violations Bureau ("CVB"), violates the Equal Protection Clause. Defendants who are prosecuted for petty offenses through the CVB are generally cited and released, not taken into custody. ECF No. 20-1 at 7. Defendants charged with a § 1325 offense, in contrast, are always taken into custody and remain in custody unless conditions of pretrial release are set by a magistrate judge. *Id.* Defendant argues that because § 1325 is a petty offense, the Government's failure to process him through CVB like other petty offenses constitutes disparate treatment that violates the Equal Protection Clause on the basis of alienage, national origin, and race.

The Equal Protection Clause is part of the Fourteenth Amendment, and states in relevant part that the government shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Streamline process does not violate the Equal Protection Clause so long as the Government demonstrates a rational basis for its use. *See, e.g.*, *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1154 (S.D. Cal. 2019); *United States v. Silva-Sosa*, No. 18MJ23270-KSC, 2019 WL 1470868, at *2–3 (S.D. Cal. Apr. 3, 2019); *United States v. Mazariegos-Ramirez*, No. 18MJ22276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019); *Chavez-Diaz*, 2018 WL 9543024, at *3.[1] Congressional acts regarding immigration are "subject only to narrow judicial review." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted); *see also United States v. Barajas-Guillen*, 632 F.2d 749, (9th Cir. 1980) ("[C]lassifications among aliens made

---

[1] *Chavez-Diaz* was reversed by the Ninth Circuit on February 5, 2020 because the Court of Appeals found that the defendant had waived his right to bring his constitutional challenges on appeal by entering an unconditional guilty plea, while the district court had found no waiver and considered the constitutional challenges on their merits. *See Chavez-Diaz*, No. 18-50391, 2020 WL 562292, at *2-6 (9th Cir. Feb. 5, 2020). Therefore, the Ninth Circuit opinion reversing the district court does not address the merits analysis, much less contradict it.

pursuant to the immigration laws need only be supported by some rational basis to fulfill equal protection guarantees.").

In analyzing whether the Government's processing of § 1325 defendants through the Streamline process rather than CVB survives rational basis review, the question is whether "the classification at issue bears some fair relationship to a legitimate public purpose." *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir. 1985) (quoting *Plyler*, 457 U.S. at 216). The Government's proffered reasons for finding Defendant's § 1325 offense unsuitable for disposition through the CVB include: 1) The CVB is "a national center charged with processing violation notices (tickets) issued and payments received for petty offenses committed on federal property[,]" and thus a criminal misdemeanor offense under Title 8 of the United States Code is not the type of offense for which the CVB calendar was designed, ECF No. 24 at 6 (quoting Central Violations Bureau, www.cvb.uscourts.gov); and 2) since Defendant was arrested for his alleged offense rather than being given a violation notice, Rule 5 of the Federal Rules of Criminal Procedure entitled Defendant to be taken "without unnecessary delay" before a magistrate judge following his arrest, making it impossible to route his case to the CVB for processing. *Id.*; Fed. R. Crim. P. 5(a)(1)(A). Each of these reasons for processing § 1325 defendants differently than other defendants accused of federal "petty offenses" satisfies the rational basis standard of review.

In finding the test met, the Court here adopts Judge Anthony J. Battaglia's detailed explanation and persuasive reasoning on the same question in *Chavez-Diaz*, 2018 WL 9543024, at *1–*4. In addition, the Court notes that requiring the Government to process § 1325 defendants through the CVB would likely prove unworkable given the nature of the charge: unlawful entry into the United States by an alien. As Defendant notes, CVB defendants are not taken into custody. They are allowed to continue living in the United States without restriction, and typically given the option to either pay a fine or appear at a hearing. That would not be a manageable way to address individuals whose alleged offense is entering the United States without authorization.

Defendant also argues that his prosecution under the Streamline process violates the prohibition on selective prosecution and selective enforcement. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). The standard for proving a claim of selective prosecution is demanding. *Id.* The executive branch, through the Attorney General and United States Attorneys, has wide discretion in enforcing criminal laws. *Id.* at 464. As long as there is probable cause to support a prosecution, "whether or not to prosecute, and what charge to file or bring before a grand jury," falls squarely within the prosecutor's discretion. *Id.*; *see also United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.").

Defendant does not argue that the fact he was charged under § 1325 reflects selective prosecution. Instead, he argues that the manner in which his charge was processed reflects selective prosecution. It is not clear that the manner of processing, rather than the fact of prosecution, can be the basis of a claim for selective prosecution. Nonetheless, Defendant has not produced any evidence that the § 1325 prosecutions of any similarly situated individuals were processed using any method other than Streamline. CVB defendants and § 1325 defendants are not similarly situated merely because their offenses carry comparable punishments. As discussed above, alienage is an element of § 1325, and the statute passes constitutional muster due to Congress's "broad power over immigration and naturalization." *Fiallo*, 430 U.S. at 792.

Defendant's claim that the charge should be dismissed because of selective enforcement also fails. A selective enforcement claim focuses on the investigatory decisions of government agencies, such as the United States Customs and Border Protection ("CBP"). *United States v. Sellers*, 906 F.3d 848, 853 (9th Cir. 2018). Although investigatory decisions of agencies are not entitled to the same deference as prosecutorial decisions by the Attorney General or United States Attorneys, *id.*, Defendant's selective

enforcement claim relates solely to how the charge brought against him by the United States Attorney's office was processed. Defendant's claim is not related to any investigatory activity by CBP or any other federal agency preceding the charge. The Government's use of the Streamline process does not amount to improper selective prosecution or enforcement.

Defendant also argues that his prosecution violates procedural and substantive due process because he should have been prosecuted under the CVB process. A procedural due process analysis considers three factors: 1) the "private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Although the Court agrees that the liberty interest that is implicated when an individual is detained by the Government is substantial, that interest must be weighed against the Government's interest. Here, the Government has put forth legitimate reasons why processing § 1325 defendants through the alternative process of the CVB would not be practicable. Further, the procedures that have been put into place through the Streamline process adequately protect against the risk of an erroneous deprivation of that interest. Those procedures include a probable cause review to support detention, appointment of counsel, and consideration of pretrial release conditions under the Bail Reform Act. Therefore, Defendant's procedural due process claim does not establish a constitutional violation under the *Mathews* balancing test.

The Court further disagrees that the prosecution violates substantive due process because the Streamline process shocks the conscience. As stated above, the Streamline process included a probable cause review, appointment of counsel, and setting pretrial release conditions. None of these procedures shocks the conscience.

Therefore, the Court denies Defendant's motion to dismiss on the grounds that Defendant's prosecution violates equal protection and due process.

### 4. Constitutionality of § 1325

Defendant argues that § 1325 is unconstitutional following the U.S. Supreme Court's opinion in *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686, 1700-01 (2017). In *Morales-Santana*, the Supreme Court held that the gender-based distinctions for derivative citizenship in 8 U.S.C. §§ 1401(a)(7) and 1409 (a) and (c) are unconstitutional because they violate equal protection under the Due Process Clause. *Morales-Santana*, 137 S. Ct. at 1698, 1700-01. In *United States v. Madero-Diaz*, 752 F. App'x 537 (9th Cir. 2019), the Ninth Circuit declined to extend *Morales-Santana* to the definition of "alien" that applies to § 1325. *Id.* at 538. This Court does not have the authority or inclination to overrule the Ninth Circuit Court of Appeals on this issue.

Therefore, the Court denies Defendant's motion to dismiss based on the alleged unconstitutionality of § 1325.

### 5. Failure to Allege the Elements of § 1325(a)(1)

Defendant argues that the charge should be dismissed because the Government failed to allege that Defendant knew he was an alien when he attempted to enter the United States.

The Court disagrees that knowledge of alienage is required under § 1325. Defendant relies on *Rehaif v. United States*, 139 S. Ct. 2191 (2019) to make this argument. *Rehaif*, however, is distinguishable. In *Rehaif*, the Supreme Court held that a defendant can be convicted of possession of a firearm by an alien who is illegally or unlawfully present in the United States under 18 U.S.C. § 922(g) only if the Government shows that the defendant knew of his illegal or unlawful immigration status. *Rehaif*, 139 S. Ct. at 2196. The Court's interpretation of § 922(g) was governed by the overall statutory scheme, which includes 18 U.S.C. § 924(a)(2). Section 924(a)(2) expressly provides for punishment of a defendant who "knowingly violates" § 922(g). *See Rehaif*, 139 S. Ct. at 2194. There is no similar express requirement in § 1325, however, that a violation be "knowing."

*Rehaif* does address the general standard for interpreting the *mens rea* requirement for an element of a criminal statute. *Id.* at 2195. The "longstanding presumption" is that

"Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). However, unlike the statute at issue in *Rehaif*, the element of alienage in a § 1325 charge does not criminalize "otherwise innocent conduct." *See Nunez-Soberanis*, 406 F. Supp. 3d at 843-45. The conduct that § 1325 criminalizes is attempting to cross the border outside the port of entry, free from official restraint. *See, e.g.*, *United States v. Argueta-Rosales*, 819 F.3d 1149, 1151 (9th Cir. 2016); *United States v. Lombero-Valdovinos*, 429 F.3d 927, 928-29 (9th Cir. 2005). Any person, whether a United States citizen or an alien, who engages in such conduct violates the laws of the United States. *Nunez-Soberanis*, 406 F. Supp. 3d. at 844 (citing 19 U.S.C. § 1459(a)). Therefore, the Government does not need to prove that a defendant knew he was an alien to obtain a conviction for violating § 1325(a)(1).

Therefore, the Court denies Defendant's motion to dismiss on the grounds that the Government failed to allege all elements of § 1325.

**B. Motion to Preserve Evidence and Compel Discovery**

Defendant asks the Court to compel the production of further discovery in broad categories. At the hearing on the motion, the Government stated that it had produced discovery available to it to date, and that it would continue to comply with its discovery obligations. Because Defendant has not identified any particular items or categories of discovery that are at issue, the Court denies this motion without prejudice. *See* ECF No. 44. The Court will, however, set a deadline for the Government to complete its production. All discovery and information required by *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); the Jencks Act; Fed. R. Crim. P. 16; and Fed. R. Evid. 404(b) must be produced by the Government on or before **October 12, 2020**. The Government is required to confirm whether any testifying witness' was a member of the the Facebook "I'm 10-15" or "America First X 2" groups, and produce any documentation available of content posted by the witness in those groups such as likes, comments, or posts.

### C. Motion to Suppress Statements

Defendant argues that statements made prior to, during, and after his arrest should be suppressed. Because it is not clear what statements made by Defendant, if any, the Government intends to introduce at trial, the Court denies this motion, without prejudice. Defendant may renew this motion at the time of trial.

### D. Motion for Leave to File Further Motions

Defendant seeks the Court's approval to file further motions. This case has been pending for almost ten months, and Defendant has already filed multiple motions, including two motions to dismiss. Defendant seeks leave to file further motions without identifying the subject matter or explaining why those motions could not have been filed before. The Court denies this request without prejudice. Other than as specifically allowed herein, before filing any further motions, Defendant must file a separate motion seeking leave to do so that sets forth the subject matter of the motion and explains why the motion was not filed earlier. The Court will grant the requested leave upon a showing of good cause.

### E. Motion to Prevent Civil Arrest

Defendant moves the Court to prohibit U.S. Immigration and Customs Enforcement ("ICE") from arresting him in the courthouse when he appears for trial. This is a request for an injunction. *See Nken v. Holder*, 129 S. Ct. 1749, 1757 (2009) (an injunction is "a means by which a court tells someone what to do or not to do"). As a magistrate judge, the undersigned's authority is constrained by 28 U.S.C. § 636(b)(1)(A), which expressly excludes the issuance of injunctions from magistrate judges' authority. *See also Teczon-Marin v. Dembin*, Case No. 3:20-cv-01493-LAB, ECF No. 8.

At the hearing on the motion, Defendant argued that if § 636(b)(1)(A) is read to preclude magistrate judges from issuing an injunction, then it must also be read to preclude magistrate judges from issuing orders to suppress evidence in criminal cases, since § 636(b)(1)(A) states:

> a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, *except a motion for injunctive relief*, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, *to suppress evidence in a criminal case*, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

28 U.S.C. § 636(b)(1)(A) (emphasis added). In this district, however, magistrate judges regularly rule on motions to suppress evidence in *misdemeanor* criminal cases. To explain that, it is helpful to compare § 636(a) and § 636(b). Section 636(a) sets forth the powers of magistrate judges. Those powers include "the power to conduct trials under section 3401, title 18, United States Code, in conformity with and subject to the limitations of that section." 28 U.S.C. § 636(a)(3). Section 3401 of title 18 allows magistrate judges to conduct trials and sentencing of misdemeanors. Thus, the power of magistrate judges to suppress evidence in *misdemeanor* criminal cases is affirmatively granted in § 636(a). Section 636(b) prohibits district judges from designating magistrate judges to hear and determine a motion to suppress evidence in a *felony* criminal case.

Beyond the insurmountable issue of this Court's lack of authority, this issue is not ripe for determination at this juncture. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 580–81 (1985)). There is no certainty that ICE will attempt to arrest Defendant in the courtroom or courthouse at his trial. ICE is not required to arrest Defendant there, and the outcome of the trial, including any potential custodial sentence for Defendant, is undetermined.

This case is also in a markedly different posture than the cases relied on by Defendant such as *Ryan v. U.S. Immigration & Customs Enforcement*, 382 F. Supp. 3d 142 (D. Mass 2019) and *New York v. U.S. Immigration & Customs Enforcement*, 431 F. Supp. 3d 377 (S.D.N.Y. 2019). In those cases, ICE was a party to the action. Here, Defendant asks the Court to enjoin ICE even though it is not a party to this action. This is further

reason to deny the relief requested. Moreover, after Defendant filed this motion, the First Circuit Court of Appeals vacated the preliminary injunction issued in *Ryan* on the grounds that "the district court abused its discretion in finding that the plaintiffs were likely to succeed on the merits of their argument that the INA implicitly incorporates a common law privilege against civil arrests for individuals attending court on official business." *Ryan v. U.S. Immigration & Customs Enforcement*, ___ F.3d ___, 2020 WL 5201945, at *1 (1st Cir. Sep. 1, 2020).

Therefore, the Court denies Defendant's motion to prohibit his civil arrest in court.

**F. Second Motion to Dismiss Based on *Village of Arlington Heights***

**1. Parties' Positions**

Defendant further argues that the charge against him should be dismissed because § 1325(a)(1) is "presumptively unconstitutional." Defendant argues that § 1325(a)(1) violates the Equal Protection Clause because, although it is facially neutral, it was enacted with a discriminatory purpose and disparately impacts a disfavored group.

Defendant contends that an analysis of § 1325(a)(1)'s constitutional validity must begin with a review of transcripts from Congressional hearings and the Congressional Record in the 1920s related to criminalization of illegal entry by aliens. These documents show that immigration was seen at that time as a method to control the racial makeup of American society. ECF No. 40-1 at 6 ("In our immigration law and practice, deportation is the last line of defense against contamination of American family stocks by alien hereditary degeneracy."). They evidence consideration for basing standards for admission of aliens on "total numbers, race, family stock, and individual quality," and the use of immigration policies to "control[] the character of future Americans." *Id.* at 14, 21; *see id.* at 22 ("Immigration control is the greatest instrument which the Federal Government can use in promoting race conservation of the Nation."). The Congressional Record reflects an open hostility to Mexican immigrants based on undeniably racist notions. ECF No. 40-1 at 117–18.

Defendant contends that this legislative history demonstrates that "racism and

eugenics" were a "motivating factor" in the criminalization of illegal entry by aliens, and that § 1325(a)(1) is tethered to this legislative history because it sets criminal penalties for illegal entry. Applying the factors set forth in *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977) and using this legislative history, Defendant argues that § 1325(a)(1) is presumptively unconstitutional because it is rooted in the discriminatory intent underlying laws enacted in the 1920s. Defendant argues that reaching back to this legislative history as a progenitor to § 1325(a)(1) is appropriate under the Supreme Court's recent opinions in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), and *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246 (2020). Defendant reads these opinions to hold that where a predecessor law is tainted with discriminatory intent, subsequent laws on the same subject matter that are non-discriminatory "do not cleanse the law of its original taint." ECF No. 40 at 19. Defendant further argues that § 1325(a)(1) also violates equal protection under *Arlington Heights* because of its disparate impact on Mexican and Latinx persons. Although current statistics are not available, Defendant points to historical statistics showing that from 2000 to 2010, between 86% and 97% of people apprehended by CBP were Mexican. ECF No. 40 at 20.

Defendant contends that because § 1325(a)(1) has a discriminatory purpose (based on the 1920s legislative history) and a disparate impact, the burden shifts under *Arlington Heights* for the Government to refute Defendant's showing, or otherwise demonstrate that the predecessor legislation – dating back to 1929 – would have been enacted without a discriminatory purpose. Defendant moves the Court to set an evidentiary hearing on these issues.

The Government disputes that there is an unbroken chain between the criminalization of illegal entry in the 1920s, and passage of a criminal penalty for attempted illegal entry in § 1325(a)(1). Although Congress made illegal entry a misdemeanor offense in 1929, Congress did not criminalize ***attempted*** illegal entry until the Immigration Act of 1990. The Government argues that Defendant's claim is non-justiciable because it is based on the legislative history of a different law than the one under which Defendant is charged,

since attempted illegal entry was not criminalized until several decades after the legislative history presented by Defendant.

The Government further argues that *Arlington Heights* is inapplicable, and Defendant cannot establish an equal protection violation in the first instance, because of Congress' plenary power to regulate immigration. The Government contends that based on this plenary power, the constitutionality of § 1325(a)(1) is subject to a highly deferential standard of review that is limited to consideration of whether it is "facially legitimate and bona fide." ECF No. 43 at 11 (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 769 (1972)). Section 1325(a)(1) satisfies this standard of review because the United States has a legitimate interest in deterring illegal entry, and § 1325(a)(1) serves that interest. The Government also disputes that the high percentage of Mexican and Latinx persons affected by § 1325(a)(1) demonstrates unlawful disparate impact, arguing that those statistics reflect the geographic situation of the border.

**2. Analysis**

Defendant's claim that § 1325(a)(1) is "presumptively unconstitutional" rests on the Supreme Court's opinion in *Arlington Heights*. In *Arlington Heights*, the Supreme Court examined a challenge to a local agency's denial of a rezoning request. 429 U.S. at 254. The Court set forth factors to be considered in determining whether there is a discriminatory purpose underlying government action. *Id.* at 266. These factors include "the impact of the official action," the "historical background" of the decision, the "specific sequence of events leading up to the challenged decision," and whether the decision reflects a departure "from the normal procedural [or substantive] sequence." *Id.* at 266–67.

Defendant's *Arlington Heights* analysis of § 1325(a)(1) is fatally flawed, however, because it relies entirely on legislative history from the 1920s, decades before § 1325(a)(1) was enacted. The Government correctly points out two key subsequent enactments whose legislative history Defendant has completely ignored: the Immigration and Nationality Act

of 1952, and the Immigration Act of 1990.[2]

Defendant's reliance on legislative history from the 1920s is based on two recent Supreme Court cases: *Ramos* and *Espinoza*. In *Ramos*, the issue before the Court was whether state laws allowing non-unanimous jury verdicts in criminal trials were constitutional. 140 S. Ct. at 1392. The Court held that the Sixth Amendment right to a jury trial "requires a unanimous verdict to convict a defendant of a serious offense." *Id.* at 1394. The Court noted at the outset that the state laws at issue were rooted in racism, although its holding was based primarily on an analysis of common law rights to a unanimous jury. *Id.* In his dissent, Justice Alito disagreed with any reference to the laws' discriminatory origins, stating that the reasons why the laws were originally adopted were not relevant to the question of their constitutionality, particularly since they were later reenacted for ostensibly non-discriminatory reasons. *Id.* at 1426 (Alito, J., dissenting). In response, the majority explained that consideration of the reasons for adoption of the state laws at issue was part of the Court's "functional analysis" required by the Sixth Amendment. *Id.* at 1401 n.44. The majority confirmed that the state laws at issue would be unconstitutional even if enacted for solely benign reasons. *Id.*

Several weeks later, the Court issued its opinion in *Espinoza*. There, the Court held that a government program that provided tuition assistance to private schools, but expressly excluded religious schools, violated the Free Exercise Clause of the Constitution. *Espinoza*, 140 S. Ct. at 2261. In a concurring opinion that was not joined by any other justices, Justice Alito argued that *Ramos* set a precedent that requires the Court to examine the original motivation behind the exclusion of religious schools from the program, which was based

---

[2] The Government argues that Defendant's tethering of the attempted illegal entry statute to legislative history of statutes that did not criminalize attempted illegal entry makes this issue non-justiciable because it asks the Court "to adjudicate the constitutionality of a crime which is not even charged." ECF No. 43 at 10. The Court disagrees. The Court's analysis is confined to the constitutionality of § 1325(a)(1), the charging statute in this case, under the arguments presented by Defendant.

17

on anti-Catholic sentiment. *Id.* at 2271 (Alito, J., concurring). Justice Sotomayor was the only justice to address Justice Alito's argument regarding the precedent of *Ramos*. In her dissent, she noted that even a law with an "uncomfortable past" is not automatically invalidated by its discriminatory origins. *Id.* at 2294 n.2 (Sotomayor, J., dissenting).

These cases do not support Defendant's contention that "*Ramos* and *Espinoza* both confirm that not only do courts examine the racial motivations of a law at the time of its passage, later reenactments do not cleanse the law of its original taint." ECF No. 40 at 19. That faulty premise underlies Defendant's entire motion. There is no support for Defendant's suggestion that § 1325(a)(1) should be judged according to legislative history from laws enacted decades before, and Defendant has not attempted to argue that § 1325(a)(1) would be unconstitutional under an *Arlington Heights* analysis of relevant legislative history. Defendant's argument that § 1325(a)(1) is "presumptively unconstitutional" under *Arlington Heights* fails.

As discussed above in reference to Defendant's first motion to dismiss, the Court agrees with the Government that the rational basis test applies to any analysis of the constitutional validity of § 1325(a)(1) under the Equal Protection Clause. In *United States v. Hernandez-Guerrero*, 147 F.3d 1075 (9th Cir. 1998), the Ninth Circuit addressed congressional power to pass criminal statutes regulating immigration. The defendant there challenged congressional authority to enact 8 U.S.C. § 1326, a related statute to § 1325(a)(1) that makes illegal entry and presence a felony. The court rejected this contention, holding that "Congress possessed ample authority to enact § 1326 pursuant to its inherent immigration power, … ." *Hernandez-Guerrero*, 147 F.3d at 1078. The court further held that because the clear purpose of § 1326 "'is to deter aliens who have been forced to leave the United States from reentering the United States,' … § 1326 is well within the ambit of Congress's sweeping power over immigration matters." *Id.* (quoting *United States v. Cooke*, 850 F. Supp. 302, 306 (E.D. Pa. 1994).

In *United States v. Lopez-Flores*, 63 F.3d 1468, 1470 (9th Cir. 1995), the Ninth Circuit addressed an equal protection challenge to the Hostage Taking Act, 18 U.S.C. §

1203, which classifies offenders and victims based on alienage. The appellants argued that the Act violated the Equal Protection Clause because of this classification. *Id.* The Ninth Circuit held that "[f]ederal legislation that classifies on the basis of alienage, enacted pursuant to Congress' immigration *or* foreign powers, is therefore subject to the lowest level of judicial review." *Id.* at 1475 (emphasis in original); *see also United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007) (applying rational basis review to sentencing guidelines that provide enhanced punishment for illegal immigrants).

Section 1325(a)(1) readily satisfies the rational basis test. The Ninth Circuit has already found that a similar felony statute, 8 U.S.C. § 1326, satisfies rational basis because it "'is a regulatory statute enacted to assist in the control of unlawful immigration by aliens.'" *Hernandez-Guerrero*, 147 F.3d at 1078 (quoting *Pena-Cabanillas v. United States*, 394 F.2d 785, 788 (9th Cir. 1968)). Section 1325(a)(1) serves the same purpose of deterring illegal immigration. Any disparate impact of § 1325(a)(1) on Mexicans and Latinx persons is more readily explained by the geographic proximity of the border to Mexico and Latin America than by racial animus. *See Dep't. of Homeland Security v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915–16 (2020) (plurality). In any event, disparate impact alone, absent some further evidence of discriminatory intent, would not be sufficient to demonstrate an equal protection violation. *Washington v. Davis*, 426 U.S. 229, 242 (1976).

Therefore, the Court denies Defendant's second motion to dismiss based on *Village of Arlington Heights.*

**G. Motion to Stay**

Defendant moves the Court to stay the proceedings to allow him to file an interlocutory appeal if the Court denies his motion to prohibit his arrest at court. The Government opposes.

In determining whether a stay is appropriate, a court must consider the likelihood of success on the merits, irreparable injury to the defendant or others involved in the proceeding, and the public interest. *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir.

2016). Here, the Court finds that these factors weigh against a stay. This is primarily because there is no likelihood of success on the merits of Defendant's motion to prohibit his arrest. As noted above, a magistrate judge has no authority to grant such a request, the issue is not ripe for determination in any event, and the requested order is directed at a non-party. The irreparable injury factor also weighs against a stay. Defendant makes no argument that he cannot present a full defense to the charge because he is in fear of arrest inside the courthouse. Defendant's arrest following trial is likely an inevitability if he has no grounds for remaining in the United States legally, and the requested order would not change that circumstance. Finally, the Court does not discern a particular public interest in the delay of Defendant's trial, particularly given the other factors to be considered for issuing a stay.

Therefore, the Court denies Defendant's motion for a stay pending interlocutory appeal.

### III.  CONCLUSION

For the reasons set forth above, the Court: (1) **DENIES** Defendant's first motion to dismiss the complaint; (2) **DENIES** Defendant's motion to preserve evidence and Compel discovery, but sets a deadline of **October 12, 2020** to complete production; (3) **DENIES** Defendant's motion to suppress statements, without prejudice; (4) **DENIES** Defendant's motion for leave to file further motions, without prejudice; (5) **DENIES** Defendant's motion to prevent his civil arrest; (6) **DENIES** Defendant's second motion to dismiss based on *Village of Arlington Heights*; and (7) **DENIES** Defendant's motion to stay.

**IT IS SO ORDERED.**

Dated:  September 14, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge